UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALAN J. MANTYLA,

    Plaintiff,

v.                                                          Case No. 2:06-cv-273
                                                                       CONSENT CASE

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**OPINION**

        In April of 2002, Alan Mantyla filed an application for supplemental security income (SSI) benefits, alleging that he was disabled as a result of anxiety, diabetes, Crohn's disease and obesity. See Transcript of Administrative Proceedings at pages 34-43 (hereinafter Tr. at ____). Plaintiff's claim was denied initially in December of 2002, and he requested a hearing in January of 2003. Plaintiff's application was lost and the file had to be reconstructed. Eventually, a hearing was held in April of 2006 before an Administrative Law Judge (ALJ). On May 15, 2006, the ALJ issued a decision denying plaintiff's claim for SSI benefits. According to the ALJ, plaintiff's Crohn's disease, diabetes, obesity and anxiety were severe impairments which significantly limited his ability to perform substantial gainful employment. The ALJ did not find plaintiff's testimony fully credible regarding the impact of his condition on his ability to work. The ALJ concluded that plaintiff retained the residual functional capacity to perform some work, including "simple, repetitive, low stress jobs with limited contact with coworkers or supervisors and no contact with the general public and not performed in open spaces." Tr. at 22. Relying on the testimony of a vocational expert, the

ALJ concluded that there were jobs which existed in significant numbers in the national economy which plaintiff could perform and, therefore, found plaintiff not disabled as that term is defined by the Social Security Act. Tr. at 22. Plaintiff filed a request for review with the Appeals Council, maintaining that the decision of the ALJ was erroneous and that he was simply denied benefits "because of the way the economy is." Tr. at 6. Plaintiff's request for review by the Appeals Council was denied on September 12, 2006. Tr. at 3-5. Thereafter, plaintiff filed this civil action seeking judicial review of the denial of SSI benefits.

Plaintiff was born on August 13, 1964, and at the time of the hearing was 6'1" tall and weighed 350 pounds. Tr. at 215. Plaintiff has past work experience as a laborer and served in the National Guard. Tr. at 20, 207, 216-17, 226. In reaching the decision in this case, the ALJ explained:

> Claimant alleges various impairments, both physical and mental with the most significant problems, according to claimant's testimony, being Crohn's disease and an anxiety disorder. He testified that he has diarrhea 3-6 times per day as a result of the Crohn's disease and spends 5-20 minutes in the bathroom for each trip. He also complained of "cramping" abdominal pain 5-6 days per month and on the average there are 3-4 days per month and he will not leave the house due to cramping and/or diarrhea. However, medical records do not substantiate that severity of his symptoms and complaints. To the contrary, the Crohn's disease is described as "well-controlled" (see entry as of February 22, 2005 in Exhibit 2F) and that claimant is "asymptomatic" (see entry as of October 24, 2005 in Exhibit 3F), a far cry from the symptoms claimant has alleged. Similar commentary about claimant "doing well" are noted on July 20 and October 7, 2004 (Exhibit 3F). The March 7, 2006 note talks about only recently increased symptoms and doing another colonoscopy, claimant testifying that he had the scope done and that Dr. Welsh told him "everything looks fine." The adjective used by Dr. Welsh in talking about claimant's condition as of March 7 was "mild." The treatment records in general from Dr. Welsh suggest that once claimant was started on medication for the Crohn's disease, that condition has been

under good control. The infrequency of visits to Dr. Welsh would also seem to suggest that for the most part the condition has not been problematic, otherwise it would be reasonable to assume that claimant would have sought out Dr. Welsh more often. He certainly was not hesitant in going back to his doctor when he was concerned about a mole on his forehead or a skin rash.

As to the anxiety, treatment has been sporadic, consisting largely of visits to Pathways for counseling by a limited license psychologist/therapist. Of particular note regarding claimant's anxiety attacks and "panic attacks" is that he consistently alleges having had this anxiety and "fear" (especially of "open places") since childhood, meaning he did previously work at substantial gainful activity levels despite whatever anxiety disorder he may have had. This is also highlighted in the most recent note of March 27, 2006 in Exhibit 6F wherein the therapist states that "despite his concerns and occasional panic attacks, Alan seems to be functioning fairly well currently." The records further suggest that claimant's decision to seek treatment, which has been sporadic, is more a function of outside variables, in particular perceived increased stressors in living with and caring for his bipolar friend or in the past going to Pathways after being arrested for driving while intoxicated and having been referred there by Great Lakes Recovery Center.

The psychological report from Patricia Frueh, Psy. D. in February, 2003, while suggesting problems with anxiety and depression, also makes clear that the problems had been longstanding, going back to claimant's teenage years. Obviously claimant was able to function in work, despite such previously and the circumstances surrounding his decision to go to that psychologist, namely to qualify for state disability brings into question to some extent the findings. It would have been more helpful if she would have included the MMPI results and the validity scale scores. Claimant's subjective perception that he is unable to "manage the responsibilities of work," which the psychologist termed more of an "attitudinal problem" does not make it so and does not establish a disabling impairment.

The medical evidence indicates that the claimant has Crohn's disease, diabetes, obesity and an anxiety disorder, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

Simply stated, the undersigned believes that while claimant may have an anxiety disorder, it is not all that severe and that claimant's functioning has not been compromised by his anxiety. Also of interest is the therapist's statement that the attacks are "occasional" compared to claimant's testimony that they occur 1-4 times per day and last 15 minutes to "hours."

Similarly regarding the Crohn's disease, which Dr. Welsh initially did not even believe existed, gastrointestinal workup has typically shown the condition to be stable and the area affected to be minimal. Once claimant was started on Pentasa, Dr. Welsh's notes seem to suggest the condition has been under relatively good control. The progress notes from both Dr. Welsh and claimant's regular physician tend to be intermittent in regard to the gastrointestinal complaints and certainly do not suggest the extreme degree of diarrhea and cramping which claimant has alleged. The significant discrepancy in claimant's testimony versus the medical records raises serious questions as to claimant's credibility.

The undersigned must determine whether he retains the residual functional capacity to perform the requirements of his past relevant work or other work existing in significant numbers in the national economy. The term "residual functional capacity" is defined in the Regulations as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks (20 CFR § 416.945 and Social Security Ruling 96-8p).

In making this assessment, the undersigned must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR § 416.929, and Social Security Ruling 96-7p. The undersigned must also consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations (20 CFR § 416.927 and Social Security Rulings 96-2p and 96-6p).

The undersigned finds that claimant has no exertional limitations and retains residual functional capacity for simple, repetitive, low stress jobs with limited contact with coworkers or supervisors and no contact with the general public and where the work is not performed in open spaces. In offering that assessment, the undersigned is giving

>  claimant considerable benefit of the doubt, especially regarding the
>  open spaces restriction.

Tr. at 18-20. The ALJ went on to find that plaintiff was not capable of performing any of his past relevant work. Relying on the testimony of a vocational expert, the ALJ concluded that there were jobs which existed in the national economy which plaintiff could perform.

This Court has jurisdiction to review the Commissioner's decision denying SSI benefits pursuant to 42 U.S.C. § 405(g). Judicial review of the denial of SSI benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner employed the proper legal standard. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. It has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981),cert. denied, 461 U.S. 957 (1983). This Court is not permitted to try the case de novo, nor resolve conflicts in the evidence and cannot decide questions of credibility. *See Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently. *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); see also *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (an en banc decision holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The Commissioner utilizes a five step analysis to determine whether an individual qualifies as disabled. The first step examines whether the claimant is performing substantial gainful

activity. If he is, he is not disabled. The second step requires the Commissioner to determine whether or not the claimant suffers from a severe impairment. If he does not, then he is not disabled. At the third step, the Commissioner examines whether or not the claimant is performing substantial activity and is suffering from a severe impairment that is expected to last for more than 12 months. If the claimant meets a listed impairment, the claimant is presumed disabled. At the fourth step, the Commissioner examines whether the claimant's impairment prevents him from doing his past relevant work. If it does not, the claimant is not disabled. At the fifth step, the Commissioner determines whether or not, given the claimant's impairments and an inability to do his past relevant work, consideration must be given to whether there is other work which exists in the national economy which the claimant is capable of performing. It was at this fifth step that the Commissioner found, considering plaintiff's severe impairments, that plaintiff was capable of performing work which existed in the national economy.

      This Court is required to review the entire record and determine whether or not there is substantial evidence to support the ALJ's decision. The Court has carefully reviewed the evidence of record to determine whether or not there is substantial evidence to support the finding that plaintiff is capable of performing work which exists in the national economy. The ALJ thoroughly examined the medical evidence of record and his decision comprehensively analyzes the medical evidence of record. This Court is not without sympathy for plaintiff's condition. Obviously, plaintiff suffers from severe impairments which have significantly limited his ability to work. However, this Court's sympathy for plaintiff cannot provide a basis for overturning the decision of the Commissioner. Having carefully considered the evidence of record, the Court concludes that

there is substantial evidence to support the decision of the Commissioner and that no legal error was committed.

Dr. Welsh indicated in August of 2004 that plaintiff's Crohn's disease was well controlled and in remission. Tr. at 106. Five months later, Dr. Welsh indicated that plaintiff's disease was "mild." Tr. at 183. A colonoscopy report indicated that everything looked okay. Tr. at 229. Plaintiff was examined by Dr. Frueh, who diagnosed plaintiff with agoraphobia, dysthymic disorder, dependent personality disorder, and alcohol dependence and gave plaintiff a GAF score of 45. Tr. at 211. According to Dr. Frueh, plaintiff was not motivated to seek treatment for his condition. Tr. at 210. More importantly, Dr. Frueh indicated that plaintiff was probably capable of work in a low skilled job. Tr. at 210-11.

The Court's review of the medical evidence of record and the decision of the ALJ leads to but one conclusion. There is substantial evidence to support the decision denying plaintiff benefits. That is not to say that the evidence might not have supported the opposite conclusion. This Court, however, is not permitted to overturn the decision of the Commissioner, even if the Court would have ruled differently if it was considering the evidence *de novo*. This Court's review of the record is limited. Therefore, the Court is constrained to find that there is substantial evidence supporting the Commissioner's decision and that the denial of SSI benefits will be affirmed.

A judgment consistent with this Opinion will be entered.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: March 18, 2008